UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

BEYAGIE GUMANEH, and BAMBA
MAMADOU,

       Plaintiffs,

  -v-                                              No.  22-CV-774-LTS-KHP

VILANO EMPLOYMENT SERVICES, INC.,
and POSTAL FLEET SERVICES, INC.,

       Defendants.

-------------------------------------------------------x

## MEMORANDUM ORDER

Plaintiffs Beyangie Gumaneh ("Mr. Gumaneh") and Bamba Mamadou ("Mr. Mamadou" and together, "Plaintiffs") bring three causes of action against Vilano Employment Services, Inc. ("VES") and Postal Fleet Services, Inc. ("Postal Fleet" and, together "Defendants").  The three claims relate to Defendants' alleged (i) failure to pay Plaintiffs overtime wages required by the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. section 201 et seq., and the New York Labor Law (the "NYLL"), sections 190 et seq.; (ii) failure to pay Plaintiffs minimum wage or overtime wages for the last two weeks of their employment; (iii) failure to timely pay Plaintiffs' wages pursuant to NYLL section 191(1)(a)(i); and (iv) failure to provide Plaintiffs with wage notices and wage statements that complied with NYLL section 195.  (See docket entry no. 1 (the "Complaint" or "Compl.").)  The Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1367.

This case is before the Court on Plaintiffs' Motion for Default Judgement Against Defendants pursuant to Federal Rule of Civil Procedure 55(b)(2). (Docket entry no. 53 (the "Motion").)[1] The Court has carefully considered Plaintiffs' submissions in connection with the instant motion. For the following reasons, Plaintiffs' unopposed motion for default judgment is granted, and:

- Mr. Gumaneh is awarded damages in the amount of $26,745.25, plus liquidated damages in the amount of $26,754.25, for his overtime claims; $3,668.50, plus liquidated damages in the amount of $3,668.50, for unpaid wages during his last two weeks of employment; $191,530.50 in liquidated damages for late payment of his wages; $5,000 in penalties for Defendants' failure to provide a wage notice; $5,000 in penalties for Defendants' failure to provide wage statements that complied with the NYLL; and post judgment interest at the federal rate.

- Mr. Mamadou is awarded damages in the amount of $19,621.56, plus liquidated damages in the amount of $19,621.56, for his overtime claims; $3,492.44, plus liquidated damages in the amount of $3,492.44, for unpaid wages during his last two weeks of employment; $144,523.12 in liquidated damages for late payment of his wages; $5,000 in penalties for Defendants' failure to provide a wage notice; $5,000 in penalties for Defendants' failure to provide wage statements that complied with the NYLL; and post judgment interest at the federal rate.

- Plaintiffs' counsel is awarded $20,500 in attorneys' fees and $734.00 in costs.

BACKGROUND

Factual Background

The following recitation of facts is drawn from the Complaint, as well as from the uncontroverted documentary evidence filed in support of the instant motion practice (see docket entry nos. 54 ("Gumaneh Decl."), 55 ("Mamdou Decl."), 56 ("Hassan Decl.")). In light of Defendants' failure to respond to discovery requests and to the Court's subsequent order

---

[1] Defendants also filed a Motion to Compel Arbitration (docket entry no. 26) in this case. In light of Defendants' failure to respond to Plaintiffs and the Court, and these consequent default judgment proceedings against Defendants, that motion is denied as moot.

permitting Plaintiff to make a motion for a default judgment (see docket entry no. 34), Defendants' answer has been stricken (see docket entry no. 44), and the well-pleaded factual allegations of the Complaint are deemed admitted.  See Metro. Opera Ass'n. v. Loc. 100, No. 00-CV-3613-LAP, 2005 WL 1712241, at *2 (S.D.N.Y. July 19, 2005) ("Upon entry of a default judgment, the well-pleaded allegations of a complaint are to be accepted as true, except those relating to the amount of damages."); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute an admission of all well pleaded allegations of liability . . . .").

At all relevant times, Defendants "were engaged in the business of providing transportation services for clients such as the United States Postal Service [('USPS')]" and had more than 70 employees.  (Compl. ¶¶ 14-15.)  Defendants "had revenues and/or transacted business in an amount exceeding $500,000" (id. ¶ 31) and conducted business in interstate commerce (id. ¶¶ 32-37).[2]  Defendants "individually and/or jointly" employed Plaintiffs as "manual workers, handling and transporting mail and packages."  (Id. ¶ 16.)  Mr. Gumaneh was employed by Defendants from around November 2018 through May 2021, and his regular rate of pay was about $29 per hour.  (Id. ¶¶ 17, 19.)  Mr. Gumaneh regularly worked more than forty

---

[2]   That is, Defendants "conducted business with vendors and other businesses outside the State of New York" (Compl. ¶ 32); "conducted business in interstate commerce involving the purchase of equipment, uniforms, and other essential supplies for their business" (id. ¶ 33); "had operations in both New York and Florida" (id.); paid "taxes and other monies to agencies and entities outside the State of New York" (id. ¶ 34); "engaged in credit card transactions involving banks and other institutions outside the state of New York" (id. ¶ 35); "transacted business with insurance companies, banks and similar lending institutions outside the State of New York" (id. ¶ 36); and "utilized the instrumentalities of interstate commerce such as the United States mail, internet electronic mail and telephone systems" (id. ¶ 37).

hours per week and averaged about 15.5 overtime hours each week.[3]  (Gumaneh Decl. ¶ 11).  Mr. Mamadou was employed by Defendants from around May 2019 through May 2021, and his regular rate of pay was about $28 per hour.  (Mamadou Decl. ¶¶ 3, 6.)  Mr. Mamadou regularly worked more than forty hours per week and averaged about 14.91 overtime hours each week.[4]  (Id. ¶ 11.)

        Plaintiffs allege a number of violations by Defendants related to wage payments.  First, Defendants "willfully failed to pay Plaintiffs an overtime rate of at least 1.5 times [their] regular rate of pay for all hours worked in excess of forty hours in a week."  (Compl. ¶ 27.)  Second, Defendants did not pay Plaintiffs any wages for the last two weeks of their employment.  (Id. ¶ 24.)  Indeed, Postal Fleet sent an email to employees on June 14, 2021, indicating that they were "unable to fund the May 16-28, 2021 payroll" due to an "ongoing dispute" with USPS.  (Docket entry no. 57 ("Pl. Mem.") at 18.)  Third, Defendants failed to pay Plaintiffs on a weekly basis and instead paid them, two weeks in arrears, on a semi-monthly basis.  (Compl. ¶ 28.)  Fourth, Defendants failed to provide plaintiff with wage notices and wage statements that complied with the requirements of NYLL section 195.  (Id. ¶¶ 29-30.)

---

[3]    The Complaint alleges additional overtime hours worked.  (Compl. ¶ 21 ("Plaintiff Gumaneh worked about 66-77 or more hours each week for Defendants.").)  However, for the purposes of the Motion, Mr. Gumaneh approximates that he worked "an average of about 55.5 hours a week" based on the pay stubs attached to his sworn declaration.  (Docket entry no. 57 ("Pl. Mem.") at 22.)

[4]    The Complaint alleges additional overtime hours worked.  (Compl. ¶ 22 ("Plaintiff Mamadou worked about 65-98 or more hours each week for Defendants.").)  However, for the purposes of the Motion, Mr. Mamadou approximates that he worked "an average of about 54.91 hours a week" based on the pay stubs attached to his sworn declaration.  (Pl. Mem. at 23.)

Procedural History

Plaintiffs filed their Complaint on January 28, 2022.  On June 21, 2022, Defendants filed their Answer.  (Docket entry no. 13 (the "Answer").)  On September 22, 2022, Defendants filed a motion to compel arbitration.  (Docket entry no. 26.)  While that motion was pending, on January 11, 2023, Plaintiffs informed the Court that Defendants failed to respond to discovery requests and had indicated to Plaintiffs' counsel that they intended to stop defending the case.  (Docket entry no. 32.)  The Court directed Defendants to submit a letter to the Court regarding their intent to continue defending the action (docket entry no. 33), and Defendants did not respond (see docket entry no. 44).  On January 23, 2023, the Court authorized Plaintiffs to make a motion for default judgment and, on April 5, 2023, the Court directed the Clerk of Court to strike Defendants' answer and issue certificates of default.  (Docket entry nos. 34, 44.)  The Clerk of Court entered a certificate of default against each Defendant on April 10, 2023 (docket entry nos. 45, 46).

Plaintiffs filed the instant Motion on June 2, 2023, requesting a default judgment against VES and Postal Fleet pursuant to Federal Rule of Civil Procedure 55.  Defendants have not responded to the default judgment motion.

DISCUSSION

Default Judgment

Federal Rule of Civil Procedure 55 provides that, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," and after entry of default, a default judgment may be entered against such person.  Fed R. Civ. P. 55(a), (b)(2).  In determining whether to grant a motion for default judgment, the Court considers three factors:

"(1) whether the defendant's default was willful; (2) whether [the] defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Santana v. Latino Express Restaurants, Inc., 198 F. Supp. 3d 285, 291 (S.D.N.Y. 2016) (citation omitted); see also Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013) (applying these factors in review of lower court grant of a default judgment).

Here, the Court finds that all three factors weigh in Plaintiffs' favor. First, Defendants' failure to respond to discovery requests as well as its "failure to respond to the default judgment motion practice [is] indicative of willful conduct." Bldg. Serv. 32BJ Pension Fund v. 1180 AOA Member LLC, No. 18-CV-12226-LTS-OTW, 2020 WL 70947, at *2 (S.D.N.Y. Jan. 3, 2020). Second, because Defendants failed to respond to this Motion, the Court is unaware of any meritorious defense that Defendants could present. Third, Plaintiffs will be prejudiced and left with no alternative recourse if they are denied judgment by default, as Defendants have willfully failed to participate in this action. (See docket entry no. 34.)

Liability under the FLSA and NYLL

The Court must next "decide whether the plaintiff has pleaded facts supported by evidence sufficient to establish the defendant[s'] liability with respect to each cause of action asserted." Santana, 198 F. Supp. 3d at 291. That is, "[u]pon entry of a default judgment, the well-pleaded allegations of a complaint are to be accepted as true, except those relating to the amount of damages." Metro. Opera Ass'n., 2005 WL 1712241, at *2. Where the Court finds that the facts and evidence sufficiently establish liability on a motion to default, it "must go on to 'determine the appropriate amount of damages, which involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the

damages to be determined under this rule.'" Santana, 198 F. Supp. 3d at 291 (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).

Coverage under the FLSA and NYLL

For liability to attach to VES and Postal Fleet for Plaintiffs' claims, Plaintiffs must establish two threshold requirements: that Plaintiffs were (1) employees of Defendants under FLSA and NYLL and (2) covered by the FLSA.

As to the first threshold requirement, the Complaint adequately alleges—indeed, the now-stricken Answer even admitted—that Defendants jointly employed Plaintiffs.  (Compl. ¶¶ 11, 13; Answer ¶¶ 11, 13.)  "To state a claim under the FLSA or the NYLL, a plaintiff must establish that the defendant is an employer."  Weng v. HungryPanda US, Inc., No. 19-CV-11882-KPF, 2022 WL 292799, at *4 (S.D.N.Y. Jan. 31, 2022).  The FLSA defines "employer" to include "any person, acting directly or indirectly in the interest of an employer in relation any employee" (29 U.S.C. § 203(d)), and "courts in this District routinely apply the same tests to make the employer determination under both" the FLSA and NYLL (Hong v. Quest Int'l Limousine, Inc., No. 19-CV-4336-SN, 2021 WL 2188149, at * 7 (S.D.N.Y. May 28, 2021)). Here, Plaintiffs allege, and Defendants admitted, that Defendants "individually and/or jointly controlled the employment of Plaintiffs and were responsible for hiring, firing, scheduling, controlling, managing, supervising, and record-keeping as to Plaintiffs' employment, among other employment functions and performed such functions as to Plaintiffs' employment." (Compl. ¶ 11; see also Answer ¶ 11.)  This is sufficient to establish an employment relationship for the purposes of default judgment.  See Khan v. Nyrene, Inc., No. 18-CV-557-ARR-ST, 2020 WL 1931282, at *1 (E.D.N.Y. Mar. 11, 2020), report and recommendation adopted, No. 18-CV-557-ARR-ST, 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020) (finding that Defendants' admission

that they "individually and/or jointly, controlled the employment of Plaintiff and was responsible for hiring, firing, scheduling, controlling, managing, supervising, and record-keeping as to Plaintiff's employment, among other employment functions" in the stricken answer was sufficient for default judgment).

The Complaint also alleges, and the now-stricken Answer admitted, that Defendants were covered enterprises under the FLSA. (Compl. ¶¶ 31-37; Answer ¶¶ 31-37.) "An employer is subject to [FLSA] coverage either (1) if the employer was an enterprise engaged in commerce or in the production of goods for commerce regardless of whether the plaintiff was so engaged, or (2) if an employee individually was engaged in commerce or in the production of goods for commerce." Kuhnmuench v. Phenix Pierre, LLC, No. 16-CV-9162-LTS, 2018 WL 1357383, at *4 (S.D.N.Y. Mar. 15, 2018) (quoting Jones v. SCO Fam. of Servs., 202 F. Supp. 3d 345, 349 (S.D.N.Y. 2016)). "An '[e]nterprise engaged in commerce or in the production of goods for commerce means an enterprise that . . . has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . ." Id. (quoting 29 U.S.C. § 203(s)(1)(a))). FLSA coverage is "rarely difficult to establish." Jacobs v. N.Y. Foundling Hosp., 577 F.3d 93, 99 n. 7 (2d Cir. 2009). Here, Plaintiffs have satisfied this minimal burden by alleging that Defendants "had revenues and/or transacted business in an amount exceeding $500,000" (Compl. ¶ 31) and conducted business in interstate commerce (id. ¶¶ 32-37).

Count One: Failure to Pay Overtime Wages

Under the FLSA, "employers are not permitted to 'employ any . . . employees . . . for a workweek longer than forty hours unless such employee receives compensation for his [or her] employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he [or she] is employed.'" Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 86 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)). "To succeed on an FLSA overtime claim, plaintiff must show that: (1) he was an employee who was eligible for overtime (not exempt from the Act's overtime pay requirements); and (2) that he actually worked overtime hours for which he was not compensated." Vinas v. Pullini Subsurface Contractors, Inc., No. 11-CV-2765-FB-LB, 2012 WL 6641662, at *2 (E.D.N.Y. Oct. 5, 2012) (quoting Hosking v. New World Mortg., Inc., 602 F. Supp. 2d 441, 447 (E.D.N.Y. 2009)). "With respect to state law overtime claims, courts have stated that the relevant portions of New York Labor Law do not diverge from the requirements of the FLSA." Id. (quoting Hosking, 602 F.Supp.2d at 447). Here, Plaintiffs satisfy both prongs.

First, Plaintiffs have established that they are eligible for overtime wages. The FLSA and NYLL minimum and overtime wage requirements apply to all non-exempt employees. See Martin v. Malcolm Pirnie, Inc., 949 F.2d 611, 614 (2d Cir. 1991). The application of an exemption under the FLSA is an affirmative defense, and "an employer bears the burden of proving that its employees fall within an exempted category of the Act." Id. Like other affirmative defenses, a Defendant's willful default constitutes a waiver of any affirmative defenses. b.I.G.f.a.c.e. Ent., Inc. v. Young Money Ent., LLC, No. 15-CV-5878-LTS, 2016 WL 5092598, at *2 (S.D.N.Y. Sept. 19, 2016) ("[D]istrict courts are not required 'to raise sua sponte affirmative defenses, which may, of course, be waived or forfeited, on behalf of an appearing

party who elects not to pursue those defenses for itself.'" (quoting <u>City of N.Y. v. Mickalis Pawn Shop, LLC</u>, 645 F.3d 114, 134-135 (2d Cir. 2011)).  For that reason, the Court concludes that Plaintiffs are not exempt from coverage under the FLSA or NYLL.

Second, both Plaintiffs have adequately alleged that they were not compensated for hours worked over forty hours per week.  Under the FLSA and NYLL, Defendants were required to maintain records of Plaintiffs' hours worked and wages paid.  <u>See</u> 29 U.S.C. § 211(c); 29 C.F.R. § 516.2; 12 NYCRR 142-2.6; NYLL § 195.  Where, as here, Defendants fail to produce time and wage records, Plaintiffs can meet their burden to demonstrate hours worked "through estimates based on [their] own recollection."  <u>Kuebel v. Black & Decker Inc.</u>, 643 F.3d 352, 362 (2d Cir. 2011).  Both Plaintiffs have submitted paystubs, accompanied by sworn declarations under penalty of perjury, indicating that they worked overtime in excess of forty hours every week of their employment.  (<u>See</u> Gumaneh Decl. ¶ 11 (averaging 55.5 hours of work every week); Mamadou Decl. ¶ 11 (averaging 54.91 hours of work every week).)  The paystubs and declarations indicate that neither plaintiff was paid the required overtime wage rate of one and a half times their regular hourly wage.  (<u>See</u> Gumaneh Decl. ¶ 8; Mamadou Decl. ¶ 8).

Therefore, Plaintiffs have established Defendants' liability for failure to pay overtime wages in violation of the FLSA and NYLL.

<u>Damages</u>

Under the FLSA, "[a]ny employer who violates the [overtime provisions] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional

equal amount as liquidated damages." 29 U.S.C.A. § 216(a).[5] Likewise, NYLL section 198 permits an employee to recover "the full amount of any [overtime wage] underpayment, and an additional amount as liquidated damages." The FLSA and NYLL do not allow "duplicative liquidated damages for the same course of conduct." Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018).

Mr. Gumaneh

Mr. Gumaneh seeks $26,745.25 in unpaid overtime wages and another $26,745.25 in liquidated damages. (Pl. Mem. at 23.) In support of this assertion, Mr. Gumaneh asserts that he worked approximately 119 weeks from the start of his employment in mid-November 2018 until May 15, 2021[6]—just before the last two weeks of his employment, for which he was not paid any wages. (Gumaneh Decl. ¶ 3; see also Pl. Mem. at 21.) Although Mr. Gumaneh alleges that he was not paid any wages for some of the overtime hours he worked

---

[5] "However, 'if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the' FLSA, 'the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed' the original unpaid wage amount." Rana v. Islam, 887 F.3d 118, 122 (2d Cir. 2018) (quoting 29 U.S.C. § 260). The Second Circuit has characterized the burden on employers to establish good faith as "difficult" and emphasized that "double damages are the norm and single damages the exception." Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 150 (2d Cir. 2008) (citation omitted). Because Defendants willfully defaulted, the Court declines to exercise its discretion to reduce the liquidated damages award.

[6] The statute of limitations is three years to bring a claim for a willful violation of the FLSA (Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 337 (S.D.N.Y. 2005)) and six years for a violation of the NYLL (Moon v. Kwon, 248 F. Supp. 2d 201, 232 (S.D.N.Y. 2002)). Plaintiffs filed their complaint on January 28, 2022. Therefore, the fact that the first three months of Mr. Gumaneh's employment fall outside the three-year FLSA statute of limitations does not affect the damages calculation because the entirety of his employment falls within the six-year statute of limitations for the NYLL. See id.

(Gumaneh Decl. ¶ 7), he only claims "unpaid overtime wages for the overtime hours that he was paid for at his straight hourly rate" as reflected by the paystubs attached to his sworn declaration (Pl. Mem. at 22).  The paystubs reflect that he worked an average of 55.5 hours per week, or 15.5 overtime hours per week, during the 119 weeks that he worked for Defendants.  (Id.)  For those overtime hours, Mr. Gumaneh was only paid his regular wage rate of $29 per hour rather than the required overtime rate of $43.50 per hour.  (See Gumaneh Decl., Ex. 3.)  The Court has confirmed that Mr. Gumaneh's calculations are accurate and establish that he is owed $26,745.25 in unpaid overtime wages and an additional $26,745.25 in liquidated damages.

Mr. Mamadou

Mr. Mamadou seeks $19,621.56 in unpaid overtime wages and another $19,621.56 in liquidated damages.  (Pl. Mem. at 24.)  In support of this assertion, Mr. Mamadou asserts that he worked approximately 94 weeks from the start of his employment in May 2019 until May 15, 2021—just before the last two weeks of his employment, for which he was not paid any wages.  (Mamadou Decl. ¶ 3; see also Pl. Mem. at 23.)  Although Mr. Mamadou alleges that he was not paid any wages for some of the overtime hours he worked (Mamadou Decl. ¶ 7), he only claims "unpaid overtime wages for the overtime hours that he was paid for at his straight hourly rate" as reflected by the paystubs attached to his sworn declaration (Pl. Mem. at 23).  The paystubs reflect that he worked an average of 54.91 hours per week, or 14.91 overtime hours per week, during the 119 weeks that he worked for Defendants.  (Id.)  For those overtime hours, Mr. Mamadou was only paid his regular wage rate of $28 per hour rather than the required overtime rate of $42 per hour.  (Mamadou Decl., Ex. 3.)  The Court has confirmed that Mr. Mamadou's calculations are accurate and establish that he is owed $19,621.56 in unpaid overtime wages and another $19,621.56 in liquidated damages.

Count Two: Failure to Pay Wages during Last Two Weeks of Employment

"Under the FLSA, an employee seeking to recover unpaid minimum wages or overtime 'has the burden of proving that he performed work for which he was not properly compensated.'" Ji ao v. Chen, No. 03-CV-0165-DF, 2007 WL 4944767, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)). The same standard applies under the NYLL. See Vinas, 2012 WL 6641662, at *3. "Since defendants failed to preserve or present employment records for the other periods of plaintiff's employment, plaintiff can rely on her recollection to establish the number of hours worked for those periods." Padilla v. Manlapaz, 643 F. Supp. 2d 302, 308 (E.D.N.Y. 2009).

Here, Plaintiffs allege that they were not paid any wages for the last two weeks of their employment with Defendants. (Compl. ¶ 24.) This allegation is bolstered by the email, dated June 14, 2021, indicating that Postal Fleet was "unable to fund the May 16-28, 2021 payroll" due to an "ongoing dispute" with USPS. (Pl. Mem. at 18.) In their respective sworn declarations, (1) Mr. Gumaneh represents that he worked "at least [his] weekly average of 55.5 hours for each of these two weeks" (Gumaneh Decl. ¶ 13), and (2) Mr. Mamadou represents that he worked "at least [his] weekly average of 54.91 hours for each of these two weeks" (Mamadou Decl. ¶ 13). The Court finds that this evidence is sufficient to establish that Defendants are liable to Plaintiffs for failure to pay overtime and minimum wages in violation of the FLSA and NYLL for work performed from May 16, 2021, through May 28, 2021.

Damages

As discussed above, employees are entitled to the full amount of any overtime wage underpayment, plus liquidated damages, for violations of both the FLSA and NYLL. Both

statutes also provide for the full underpayment of minimum wages, plus liquidated damages. 29 U.S.C.A. § 216(a); NYLL § 198. Sections 191 and 198 of the NYLL further entitle employees to the wages "in accordance with the agreed terms of employment" in addition to the statutory minimum wage.

### Mr. Gumaneh

Mr. Gumaneh seeks $3,668.50 in unpaid wages and an additional $3,668.50 in liquidated damages for the two weeks of the last pay period. (Pl. Mem. at 19.) In support of this amount, Mr. Gumaneh asserts in his sworn declaration that he worked "at least [his] weekly average of 55.5 hours for each of these two weeks" without any wages. (Gumaneh Decl. ¶ 13.) Because he is owed $29 per hour for the first forty hours he worked and $43.50 per hour for the overtime hours he worked, the Court concludes that Mr. Gumaneh is entitled to $3,668.50 in unpaid wages for the last pay period. The Court awards Mr. Gumaneh an additional $3,668.50 in liquidated damages.

### Mr. Mamadou

Mr. Mamadou seeks $3,492.44 in unpaid wages and an additional $3,492.44 in liquidated damages for the two weeks of the last pay period. (Pl. Mem. at 21.) In support of this amount, Mr. Mamadou asserts in his sworn declaration that he worked "at least [his] weekly average of 54.91 hours for each of these two weeks" without any wages. (Mamadou Decl. ¶ 13.) Because he is owed $28 per hour for the first forty hours he worked and $42 per hour for the overtime hours he worked, the Court concludes that Mr. Mamadou is entitled to $3,492.44 in unpaid wages for the last pay period. The Court awards Mr. Mamadou an additional $3,492.44 in liquidated damages.

Count Three: Violations of NYLL sections 190, 191, 193, 195, and 198

Plaintiffs' final cause of action is related to three alleged violations of the NYLL by Defendants: failure to timely pay wages, failure to provide wage notices, and failure to provide compliant wage statements. The Court evaluates Defendants' liability under each theory in turn.

Failure to Timely Pay Wages

NYLL section 191(1)(a)(i) requires that manual workers be paid on a weekly basis, and NYLL section 190(4) defines "manual worker" as "a mechanic, workingman, or laborer." The New York Department of Labor has long interpreted the term to include "employees who spend more than 25 percent of their working time performing physical labor." Rankine v. Levi Strauss & Co., No. 22-CV-03362-LTS, 2023 WL 3582323, at * 6 (S.D.N.Y. May 22, 2023) (quoting N.Y. Dep't of Labor Opinion Letter, No. RO-09-0066 (May 21, 2009)).

The Complaint alleges—and the Answer admitted—that Plaintiffs were "manual workers" because they "handl[ed] and transport[ed] mail and packages." (Compl. ¶ 16; Answer ¶ 16.) The Complaint further alleges that "Defendants paid Plaintiffs later than weekly" and instead paid them "on a semi-monthly basis." (Compl. ¶ 28.) This allegation is supported by the pay stubs attached to Plaintiffs' sworn declarations, which indicate that Plaintiffs were paid about two weeks after the end of each two-week pay period. (See Gumaneh Decl., Ex. 2; Mamadou Decl., Ex. 2.) The Court finds that this evidence is sufficient to establish that Defendants are liable to Plaintiffs for failure to timely pay wages under NYLL sections 190 and 191.

Damages

An employer's failure to timely pay wages to a manual worker entitles the employee "to recover the underpayment as liquidated damages." Williams v. Miracle Mile Prop. 2 LLC, No. 20-CV-3127-JS-ARL, 2022 WL 1003854, at *9 (E.D.N.Y. Feb. 1, 2022). In other words, Plaintiffs are entitled to the total amount of late wages as liquidated damages.

Mr. Gumaneh seeks $191,530.50, and Mr. Mamadou seeks $144,523.12 in liquidated damages. (Pl. Mem. at 26). These figures approximate the total amount that Plaintiffs were paid late based on each of their paystubs. (See id.) Critically, Plaintiffs proffer evidence suggesting that all of their wages were paid at least two weeks late: as the paystubs indicate, both Plaintiffs were paid "about two weeks after the end of the semi-monthly pay period." (Id. (citing Gumaneh Decl., Ex. 2 and Mamadou Decl., Ex. 2); see also Gumaneh Decl. ¶ 12; Mamadou Decl. ¶ 12.) The Court has reviewed these estimates and awards Mr. Gumaneh $191,530.50 and Mr. Mamadou $144,523.12 in liquidated damages for untimely payment of wages in violation of NYLL section 191(1)(a)(i).

Failure to Provide Wage Notices

Section 195(1)(a) of the NYLL requires employers to provide employees, at the time of hiring, with a wage notice that contains a variety of information, including "the regular hourly rate and overtime rate of pay." The Complaint alleges that Plaintiffs never were provided with any such notice. (Compl. ¶ 29.) This is allegation is sufficient to establish Defendants' liability under NYLL section 195(1). See Ilagorre v. LT Burger, Inc., No. 22-CV-3107-JMA-JMW, 2023 WL 4532445, at *1 (E.D.N.Y. July 13, 2023) (granting default judgment on claims related to wage notice provisions of the NYLL).

Damages

Section 198(1-b) of the NYLL entitles Plaintiffs to recover $50 each per workday that their employer failed to provide them with compliant wage notices; section 198(1-d) provides that employees are entitled to a maximum of $5,000.00.  The Court concludes that Mr. Gumaneh and Mr. Mamadou are each entitled to the statutory maximum of $5,000.00.

Failure to Provide Compliant Wage Statements

Section 195(3) of the NYLL requires employers to provide employees "with a statement with every payment of wages" that includes "the overtime rate or rates of pay[,] the number of regular hours worked, and the number of overtime hours worked."  The Complaint alleges that the wage statements they were provided "did not contain all hours worked by Plaintiffs nor all wages earned, among other deficiencies." (Compl. ¶ 30.)  This allegation is supported by (1) Plaintiffs' statements in their sworn declaration, indicating that they regularly worked "some overtime hours for which [they were] not paid at all" (Gumaneh Decl. ¶ 7; Mamadou Decl. ¶ 7) and (2) the pay stubs themselves, which did not include overtime rates of pay or the number of overtime hours worked (Gumaneh Decl., Ex. 2; Mamadou Decl., Ex. 2).  Therefore, Plaintiffs have established Defendants' liability under NYLL section 195(3).  See Ilagorre, 2023 WL 4532445, at *1 (granting default judgment on claims related to wage statement provisions of the NYLL).

Damages

Section 195(3) of the NYLL entitles Plaintiffs to recover $250 each per workday that their employer failed to provide them with compliant wage notices; section 198(1-d)

provides that employees are entitled to a maximum of $5,000.00.  The Court concludes that Mr. Gumaneh and Mr. Mamadou are each entitled to the statutory maximum of $5,000.00.

Attorneys' Fees

Both the FLSA and NYLL provide for an award of reasonable attorneys' fees and costs to employees who succeed on their claims.  29 U.S.C. § 216(b); NYLL § 198(1-a).  A "presumptively reasonable fee" is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  "The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed."  Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012).

Plaintiffs' counsel seeks $20,500.00 in attorneys' fees—to compensate him for 41 hours of work at the rate of $500 per hour—and $734.00 in costs.  (Pl. Mem. at 30.)  In support of his billing rate, Plaintiffs' counsel submitted a declaration detailing his extensive experience as a solo practitioner in wage-and-hour litigation.  (Hassan Decl. ¶¶ 10-22.)  Plaintiffs' counsel further notes that, in the last three to five years, courts in this Circuit have awarded him $450-$500 per hour in light of his experience and qualifications.  (Pl. Mem. at 28-29 (citing Almond v. PJ Far Rockaway, Inc., No. 15-CV-06792-FB-JO, 2018 WL 922184, (E.D.N.Y. Feb. 15, 2018) and Saravia v. Royal Guard Fence Co., No. 19-CV-2086-DRH-SIL, 2020 WL 5231696 (E.D.N.Y. Dec. 14, 2020)).)  In support of his hours worked, Plaintiffs' counsel submitted detailed time records indicating that he expended over 52 hours on this case since it was filed over a year and a half ago.  (Hassan Decl., Ex. 3.)  Plaintiffs' counsel applied a 20% reduction "downwards to 41 hours in the exercise of billing judgment and to further increase the reasonableness of the time and fees claimed."  (Pl. Mem. at 30.)

The Court concludes that $20,500.00 in attorneys' fees, representing 41 hours worked at a rate of $500 per hour, is a reasonable award in this case.  The Court further awards Plaintiffs' counsel $402.00 for the filing fee and $332.00 in service costs for a total of $734.00 in costs.

## CONCLUSION

For the foregoing reasons, the Court hereby grants Plaintiffs' unopposed Motion for Default Judgment against VES and Postal Fleet and awards the following damages:

- Mr. Gumaneh is awarded damages in the amount of $26,745.25, plus liquidated damages in the amount of $26,754.25, for his overtime claims; $3,668.50, plus liquidated damages in the amount of $3,668.50, for unpaid wages during his last two weeks of employment; $191,530.50 in liquidated damages for late payment of his wages; $5,000 in penalties for Defendants' failure to provide a wage notice; $5,000 in penalties for Defendants' failure to provide wage statements that complied with the NYLL; and post judgment interest at the federal rate.

- Mr. Mamadou is awarded damages in the amount of $19,621.56, plus liquidated damages in the amount of $19,621.56, for his overtime claims; $3,492.44, plus liquidated damages in the amount of $3,492.44, for unpaid wages during his last two weeks of employment; $144,523.12 in liquidated damages for late payment of his wages; $5,000 in penalties for Defendants' failure to provide a wage notice; $5,000 in penalties for Defendants' failure to provide wage statements that complied with the NYLL; and post judgment interest at the federal rate.

- Plaintiffs' counsel is awarded $20,500.00 in attorneys' fees and $734.00 in costs.

This Memorandum Order and Opinion denies docket entry no. 26 as moot and resolves docket entry no. 53.  The Clerk of Court is respectfully requested to enter judgment against the Defendants, jointly and severally, accordingly and close this case.

SO ORDERED.

Dated: New York, New York
September 5, 2023

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge